IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

          Plaintiff,

VS.                          Case No 1:06CV40

WARREN R. HAUGHT and
LENNA G. HAUGHT,

          Defendants.

**OPINION/ORDER DENYING DEFENDANTS', WARREN R. HAUGHT AND LENNA G.
HAUGHT, MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT IN REGARD TO COUNT I**

      This is a civil action brought by the United States against individual taxpayers seeking

judgment under Count I for underpaid taxes, interest and penalties arising from the taxpayers

personal income tax return for the tax year ending December 31, 1982 and seeking judgment under

Count II against Warren R. Haught as a responsible person for the willful non-payment of

withholding taxes originally due from Mercury Tool, Inc. and interest and penalties thereon.

Pending Motions with respect to Count II are not addressed in this Opinion/Order.

      On August 31, 2007, Defendants ("Haught") filed their Motion for Summary Judgment, or

in the Alternative, Partial Summary Judgment in Regard to Count I, hereinafter called "Motion."

[Docket Entry 29].  The United States filed her Memorandum in Opposition to Defendants' Motion

for Summary Judgment, or in the Alternative, Partial Summary Judgment in Regard to Count I

(hereinafter called "Response") on October 2, 2007. [Docket Entry 37].  On October 8, 2007,

Defendants filed their Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion for

Summary Judgment, or in the Alternative, Partial Summary Judgment in Regard to Count I,

hereinafter called "Reply." [Docket Entry 39].  In accord with leave granted by the Court during the

final pre-trial conference, Plaintiff filed her Sur-Reply in Opposition to Defendants' Motions for

Summary Judgment on October 31, 2007 [Docket Entry 61], and Exhibits thereto under seal on

November 1, 2007. [Docket Entry 65].  Thereafter, Defendants, with leave of court filed their

Supplemental Memorandum of Law Regarding the Application of Contract Principles to Restrict the Scope of Form 872-A. [Docket Entry 66].

**Relevant Undisputed Facts**

The following relevant facts are not disputed:

1)      The Haughts filed their 1040 Federal Income Tax Return for the year ending December 31, 1982[1].  Haughts claimed a charitable donation of $500,565.00 for oil and natural gas well leases valued at $1,265,977.00, which they gave to the Smithville United Methodist Church in 1982.

2)      The IRS disputed the value, claiming fair market value of the leases to be $138,000.00, entitling Haughts to a charitable deduction of $62,100.00 for 1982. The notice dated December 31, 1982, advised the Haughts that the claimed underpayment of tax for 1982 was $231,512.00, plus a 30 percent penalty of $69,454.00 under Section 6659 of the Internal Revenue Code. [Plaintiff's Response, Attachment 2].

3)      By "30 day" letter dated August 31, 1983, the IRS notified Haughts that it did not agree with Haughts' claim for charitable deduction and would adjust their taxes based on the oil and gas well lease donation having a FMV of $138,000.00.  The IRS further notified Huaghts that by adjustment of the FMV, a deduction of $62,100.00 would be allowed and if the IRS did not hear otherwise from the Haughts within 30 days the Haughts' 1982 tax liability would be increased by an additional sum of $202,791.00.

4)      On December 21, 1984, the IRS wrote Mr. Haught advising him that the limitation period prescribed by law for assessing additional tax on the December 31, 1981, tax period may expire and that the IRS needed more time to consider the issues raised by windfall profit

[1]There is a dispute between counsel for the parties whether the return was filed on April 15, 1983, or August 1, 1983.   Based on the IRS Certificate Of Official Record, dated February 23, 2006, the IRS itself shows Haughts' payment of $540,043.00 with return dated 4/15/83. Based on that official record the return in question was filed on April 15, 1983. [Defendants' Exhibit 1, filed with Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment in Regard to Count 1.  IRS is unable to find its own administrative record which may have shed other light on the issue of when the return was filed.]

excise for crude oil that was removed during the four taxable periods of 1981. [Defendants' Reply, Defendants' Exhibit 1].

Warren E. Haught signed the requested "Special Consent to Extend the Time to Assess Tax" on December 29, 1984. [Defendants' Reply, Defendants' Exhibit 2].

5)   On September 12, 1985, the IRS wrote the Haughts advising them that the IRS was examining the Partnership or Trust Return of IRE Real Estate Fund and the statute of limitations on refunds or assessing claims of additional tax due would soon expire. As a result, Haughts jointly executed a Special Consent to Extend the Time to Assess Tax for the period ending December 31, 1982, on September 17, 1985. [Defendants' Reply, Defendants' Exhibit 3 and IRS Response, Plaintiff's Exhibit 1].

6)   On August 31, 1987, the IRS wrote a 30 day letter to Haughts advising them that it had examined and adjusted their tax liability for the year ending December 31, 1982, and that the Haughts owed $202,791.00 more in taxes. This sum did not included penalties and interest. [Defendants' Motion, Exhibits 2 and 3].

7)   On August 31, 1987, Haughts protested the re-evaluation of their taxes by the IRS. [Defendants' Motion, Exhibit 4].

8)   On August 3, 1988, the IRS determined Haughts owed $231,512.00 on the 1982 tax return. The IRS claimed Haughts overstated the value of the oil and gas leases they gave to the Church. [IRS Response, Plaintiff's Exhibit 2].

9)   Haughts petitioned the United States Tax Court for relief on October 27, 1988. [IRS Response, Plaintiff's Exhibit 3].

10)  The Tax Court rendered its decision on February 22, 1993, concluding that the value of the oil and gas leases donated by Haughts to the church in 1982 was $439,569.00.

11)  The assessment statute of limitations was not presented to or decided by the Tax Court.

12)  The decision of the Tax Court was not appealed and became final on January 10, 1994.

13) On June 2, 1994, the IRS assessed Haughts $1,113,887.74 for taxes, penalties and interest, less any payments made directly or indirectly (levy) on their 1982 personal income tax return.

14) On March 28, 2001, Haughts made an offer in compromise to the IRS.

15) On July 30, 2003, the IRS rejected the Haughts' offer in compromise.

16) On August 27, 2003, the Haughts requested that the IRS reconsider their offer in compromise. [Sur-reply, Exhibit 7].

17) On March 5, 2004, the IRS again rejected Haughts' offer in compromise. [Sur-reply, Exhibit 8].

18) The within collection suit was instituted by the IRS against Haughts on March 14, 2006.

19) Haughts timely filed affirmative defenses to IRS suit asserting that

    A) The IRS claim in Count I is time barred because the assessment was not made within three years after the return was filed pursuant to 26 USC §6501(a).

    B) The IRS claim in Count I is time barred because the suit for collection of the tax was not filed within ten years after the assessment of the tax pursuant to 26 USC §6502(a)(1).

## Contentions of the Parties

**Defendants' Motion For Summary Judgment:**

    A) The IRS claim in Count I is time barred because the assessment was not made within three years after the return was filed pursuant to 26 USC §6501(a).

    B) The IRS claim in Count I is time barred because the suit for collection of the tax was not filed within ten years after the assessment of the tax pursuant to 26 USC §6502(a)(1).

    C) Haughts are entitled to partial summary judgment, requiring the IRS to honor the $69,704.00 fuel credit claimed by Haughts in the Amended 1040X filed post Tax Court Decision.

D) Haughts are entitled to partial summary judgment requiring interest to be calculated from the date of assessment (June 2, 1994) instead of April 15, 1983, the date they filed their 1982 tax return.

**IRS Response**

A) The assessment is not statutorily time barred under the provisions of 26 USC §6501(a) because:

    1) The 1982 return was due on April 15, 1983, but was not actually filed until August 1, 1983, which would give the IRS until August 1, 1986, in which to make the assessment.

    2) Haughts executed a Form 872-A- (C) on September 17, 1985, extending the limitation period for assessment until

        a) terminated by either party by execution of Form 872-T; or

        b) 90 days after a statutory notice of deficiency is issued; or

        c) 60 days after the decision of the Tax Court becomes final in a case filed by the taxpayers.

B) The suit against Haughts is not time barred under the provisions of 26 USC §6502(a)(1) because:

    1) The assessment was timely made on June 2, 1994.

    2) On March 28, 2001, Haughts made an offer in compromise which tolled the running of the statute of limitations while the offer in compromise was pending and for 30 days after its rejection and for any period when a timely filed appeal from the rejections was being considered by the IRS Appeals Office under 26 CFR §301.7122-1.

C) Defendants are not entitled to a $69,704.00 fuel credit because:

    1) IRS Revenue Agent Jesse Watts did not have authority to bind the IRS to any such credit; and

2)    The report of Jesse Watts approving the credit is subject to review and acceptance by a person authorized by the IRS; and

3)    There is no evidence of any authorized person in the IRS above Jesse Watts approving the credit.

D)    Interest is properly calculated to the date the 1982 tax return was due pursuant to 26 USC §6601(b) and 6151.

## Defendants' Reply

A)    The 872-A Forms executed by Haughts did not extend the three-year statute of limitations for assessment because:

1)    They were based on contractually binding representations of the IRS that the extensions of tolling of the statute of limitations on assessment were for the sole purpose of the IRS examining and assessing overpayments or charging additional tax based on review of IRE Real Estate Fund investment of Mr. Haught and

2)    The assessment ultimately made was based on the IRS's challenge to the valuation of the charitable deduction claimed for oil and gas leases donated by the Haughts to their church in 1982.

B)    The subject collection suit is time barred because the Community Renewal Tax Relief Act of 2000, which became effective on December 21, 2000, eliminated the suspension of the statute of limitations during the pendency of an offer in compromise until the Job Creation and Worker Assistance Act of 2002 became effective on March 9, 2002.

C)    Haughts are entitled to the fuel credit because:

1)    The IRS cannot locate its own administrative file;

2)    IRS Revenue Agent Watts approved the fuel credit; and

3) The IRS has no evidence that someone other than Revenue Agent Watts did not approve the fuel credit he recommended.

D) Interest should be calculated from June 2, 1994, because it is inequitable for the IRS to profit from its unilateral alteration of the scope of Form 872-A, as executed by the taxpayers, thereby causing them to bear years of additional interest.

**IRS Sur-reply**

A) Haughts' letter of August 27, 2003, requesting the IRS reconsider their previously made and rejected offer in compromise extended the tolling of the 10 year statute of limitations from August 27, 2003, until after the IRS rejected the reconsidered offer in compromise on March 5, 2004.

## Standard of Review

Summary judgment is appropriate "if there is no genuine issue of material fact. Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden does not require the moving party to show evidence that proves absence of a genuine issue of material fact, but only to point out its absence. Id.

The burden then shifts to the party opposing the motion. The adverse party may not rest upon mere allegations or denials, Anderson, 477 U.S. at 248, and summary judgment is appropriate if the adverse party fails to show, under Rule 56, the existence of an element essential to that party's case. Celotex, 477 U.S. at 322. A mere scintilla of evidence supporting the case is insufficient. Anderson, 477 U.S. at 252. With regard to the burden on the adverse party, Rule 56(e) provides in part that:

> [W]hen a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere

allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, supra at 255. With these standards in mind, the Court will proceed to the motion.

## Discussion

### Is the Assessment Time Barred?

26 USC §6501(a) provides in pertinent part: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term 'return' means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit)."

26 USC §6501(c)(4)(A) provides in pertinent part: "Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, . . ., both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon."

The IRS did not issue its statutory notice of deficiency to the Haughts until August 3, 1988. That notice triggered the commencement of the ninety (90) day period within which the IRS had to assess the tax.

However, on October 31, 1988, within the ninety (90) day period, Haughts filed a petition with the United State Tax Court challenging the basis on which the IRS claimed deficiency was

calculated.  While that petition was pending in the Tax Court and for sixty (60) days after the decision by the Court, the time for filing of the assessment was extended by operation of 26 USC 6501(a).

For purposes of the analysis of the issue presented the Court accepts that Defendant Haughts timely filed their 1982 1040 tax return by April 15, 1983, making the assessment of any tax, without agreement to an extension, due by April 15, 1986.  According to the IRS RACS Report 006, a Certificate of Official Record pertaining to Haughts' 1982 income tax liability, IRS first assessed tax, interest and penalties it claimed were due on June 2, 1994.

However, by letter dated September 12, 1985, the IRS requested that Haughts agree to an extension of the statute of limitations for assessment.  On September 17, 1985, Haughts executed Form 872-A( C ) "Special Consent to Extend the Time to Assess Tax" which provided in pertinent part: "(1) The amount(s) of any Federal Income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1982, may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872-T to the taxpayer(s); or ( c ) the Internal Revenue Service mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited. . . ."

The IRS letter dated September 12, 1985 forwarding Form 872-A- ( C ) to and requesting that Haughts agree to the extension of the statute of limitations relative to the assessment clearly and unambiguously indicated: 1)  that the IRS was "[e]xamining the **partnership or trust return**"[2] **of**

_____

[2]The language of the September 12, 1985 letter in questions is: "We are currently examining the partnership or trust return identified above.  (*IRE Real Estate Fund*) According to our records, you were a member of the partnership or trust in that year.
    If, as a result of our examination, we propose adjustments to the return, and the adjustments are determined to be valid, your individual income tax return will also be affected.

**the IRE Real Estate Fund**; 2) its examination may result in proposed adjustments to the return (the return of the IRE Real Estate Fund); 3) if such adjustments to the IRE Real Estate Fund Return were proposed, those proposed adjustments may affect the Haught's individual return. No place within the cover letter dated September 12, 1985 did the IRS indicate: 1) it was examining the Haughts charitable contribution of oil and gas leases to a church; or 2) it was examining the Haught's individual income tax return for the period ending December 31, 1982.

It is undisputed that the cover letter was prepared by the IRS without input from the Haughts. It is undisputed that the cover letter transmitted the Form 872 which was ultimately signed and returned by the Haughts to the IRS.

The IRS cover letter states: "If we propose adjustments you do not agree to, you may want to present your views to a member of our office of regional director of appeals. So that you will have time to do this, we want to extend the limitation period prescribed by law for refunding overpayments or charging additional tax, because it will soon expire." These two sentences further reinforce the conclusion that the purpose of the extension was to permit review of adjustments that may be proposed as a result of the review of the IRE Real Estate Fund Return.

The language of the Special Consent is broader and includes "[t]he amount(s) of any Federal Income tax due on any return(s) made by . . . the above taxpayer(s) for the period(s) ended December 31, 1982." The language on the face of the consent was prepared solely by the IRS. On its face, it makes it clear that Haughts were consenting to the extension of the time within which the IRS could assess *any taxes* due on *any* 1982 federal tax returns.

---

If we propose adjustments you do not agree to, you may want to present your views to a member of our office of regional director of appeals. So that you will have time to do this, we want to extend the limitation period prescribed by law for refunding overpayments or charging additional tax, because it will soon expire. Therefore, please sign and return all copies of the enclosed consent, Form 872, within 10 days from the date of this letter. An addressed envelope is enclosed for your convenience. When we receive your forms and accept the consent, we will return a copy for your records."

The question squarely before this Court is whether the language contained in the cover letter accompanying the 872-A Special Consent Form conditionally limited the running of the Statute of Limitations on the time for assessment to adjustment in tax due based on a review of the IRE Real Estate Fund.

This Court was not able to find and counsel for the parties did not point the Court to a Fourth Circuit Case directly on point. However, the Court finds the language of Ripley v. Commissioner of Internal Revenue, 102 F.3d 332 (4th Cir. 1996) instructive. Ripley challenged a Tax Court determination that the applicable one year statute of limitations on the assessment of tax had not expired pursuant to the terms of the language contained within the signed 872. Judge Wilkins writing for the Court, noted that "A Form 872 is not a contract, but a waiver of a limitations period" citing: Stange v. United States, 282 U.S. 270, 276, 51 S.Ct. 145, 147, 75 L.Ed. 335 (1931) to the effect that "waiver of limitations period is not a contract but a 'voluntary, unilateral waiver of a defense by the taxpayer.'" Judge Wilkins further noted: "[n]evertheless, when a taxpayer qualifies the waiver of the limitations period on specified conditions, those conditions cannot be ignored." citing United States v. Hodgekins, 28 F.3d 610, 614-15 (7th Cir. 1994) for "holding that the IRS could not induce a taxpayer to relinquish the protection afforded by the stature of limitations based on a representation contained in the extension agreement drafted by the IRS and then disregard the condition. Judge Wilkins also cited: United States v. National Steel Corp., 75 F.3d 1146, 1151 (7th Cir. 1996) and Grunwald v. Commissioner, 86 T.C. 85, 89 WL22077 (1986) for the propositions: 1) "that conditions recited in a waiver of applicable limitations period are enforceable against IRS" and "[a] deal is after all a deal, and fairness dictates that both parties adhere to the provisions of the [Form 872-A] document they both voluntarily signed." Judge Wilkins also noted that "many courts ,,, recognized that principles of contractual interpretation must be utilized in construing them."

In the instant case, the alleged conditioning language was not placed in the Form 872-A Consent. Instead it was placed in the cover letter. The question then becomes whether language in a transmittal document clearly accompanying the consent form can modify the consent given by

execution of the form.  In <u>Smith v. Commissioner of Internal Revenue</u>, T.C. Memo. 1989-87, held that the Commissioner was bound by the terms of a letter drafted by the taxpayer conditioning waiver of the statute of limitations even if the Commissioner's employee did not read or comprehend the import of the conditions prior to executing the waiver form on behalf of the Commissioner.   In another case, <u>Sager v. Commissioner of Internal Revenue</u>, T.C. Memo. 1988-193, the opinion noted: "An agreement to extend the statute of limitations for assessment and collection of an income tax is not a contract, but rather a waiver of a defense by the taxpayer.   Contract principles are significant, however, because section 6501( c ) (4) requires that the parties reach a written agreement.  An agreement under section 6501( c ) (4) requires mutual assent, but does not require consideration.  The objective manifestation of mutual assent as evidenced by the parties' overt acts determines whether the parties have made an agreement." (internal citations omitted).  Finding from the facts that Sager knew the IRS was investigating his Schedule C  recording business loss prior to his signing of the 872-A waiver form, evidenced his clear understanding that the waiver extended to the Schedule C issues and was not limited by the cover letter and prior correspondence of the IRS.

Following the above reasoning, the Court finds that the language of the 872-A signed by Haughts must be read in conjunction with the IRS cover letter which accompanied or transmitted the form to Haughts in order to determine the intent of the parties.  As previously noted, the cover letter clearly states:   "We are currently examining **the partnership or trust return identified above**.  (*IRE Real Estate Fund)* According to our records, **you were a member of the partnership or trust in that year**.  If, **as a result of our examination**, we propose adjustments to the return, and the adjustments are determined to be valid, **your individual income tax return will also be affected**."  From this language, it is clear that the IRS was examining the IRE Realestate Fund and based on that examination, if adjustment in taxes owed by Haughts on their individual return would be made, the IRS would need an extension of time to assess those additions and the Haughts would need more time to request and seek review.  The Court inquired of counsel for the IRS to determine if the IRS had any evidence that the Haughts knew or had any understanding that the IRS was

looking into the valuation of the oil and gas well charitable donation they made to the church at the time the 872 waiver was requested by the Service and signed by the Haughts. Counsel candidly told the Court **he had no such evidence**. (emphasis added by the Court).

The Court on closer examination of the documents post Rule 16 conference, finds that: the cover letter was part of the waiver; the cover letter was prepared by the IRS; the cover letter clearly and unambiguously stated the IRS was conducting an examination of the IRE Realestate Fund; the Fund was a separate and distinct return from the deduction the Haughts had made for the donation of the oil and gas leases to the church and the valuation of those leases; Haughts signed the 872 waiver form; while representations in the September 12 cover letter did not expressly condition the waiver of the statute of limitations on the IRS finding something in the IRE Realestate Fund that would cause adjustments and might affect their individual return for the year ending December 31, 1982, the language of the letter impliedly did so; and when read in conjunction with the 872 waiver, Haughts were led by the IRS to believe that the purpose of the extension of the statute of limitations was to permit review of IRE Realestate Fund tax return and to assess any taxes or to refund any taxes paid or to adjust the Haughts individual return for the year ending December 31, 1982 based on the results of the review of the IRE Realestate Fund tax return. "A deal is after all a deal, and fairness dictates that both parties adhere to the provisions of the [Form 872-A] document they both voluntarily signed." Grunwald v. Commissioner, *supra* at 89.

Based on the foregoing analysis, the execution of the 872 was limited and conditioned on review of the IRE Realestate Fund Tax Return and was not effective to stay the running of the statute of limitations on review of the value of the charitable contribution of oil and gas leases to the church and any assessment of tax based on that review. Accordingly, without more, the three year statute of limitations would have expired by April 15, 1986, long before the assessment was actually made. However, a Tax Court case was initiated by the Haughts on October 27, 1988 to challenge the proposed IRS valuation of the gift to the church. Even though Haughts did not file the petition in the Tax Court until the statute of limitations on assessment had expired, the Tax court still had

jurisdiction. The expiration of the statute of limitations prior to assessment is not jurisdictional. Davenport Recycling Associates v. C.I.R., 220 F.3d. 1255, 1260-61 (11th Cir. 2000) ("Expiration of statute of limitations for tax assessment was affirmative defense that did not implicate jurisdiction of Tax Court." "Subject matter jurisdiction defines a court's authority to hear a particular type of case. The expiration of a statute of limitations is an affirmative defense that may be pled in a case which is already within the court's authority to decide, and the ability of a party to assert such a defense has nothing to do with the court's power to resolve the case.") (internal citations omitted).

Moreover, the Haughts could have raised the statute of limitations issue before the Tax Court. Haughts give no explanation in fact or law as to why they did not raise the issue before the Tax Court. If they believed their 872 extension was conditional as they now successfully argue, they should have apprised the Tax Court so it could consider whether the claim was time barred. The statute of limitations defense is an affirmative defense which must be pleaded lest it be deemed to have been waived. In re Doerge, 181 B.R. 358, 75 A.F.T.R.2d 95-2517, Bankr. S.D. Ill., Apr 18, 1995).

The Tax Court did consider the valuation of the oil and gas well lease donation made by the Haughts to the church and its decision with respect thereto is res judicata. "A judgment is absolute bar to subsequent action on same claim, but where second action between same parties is upon different claim or demand, judgment in prior action operates as estoppel only as to those matters in issue or points controverted, upon determination of which finding or verdict was rendered." U.S. v. International Bldg. Co., 345 U.S. 502, 73 S.Ct. 807 (1953). While it is clear that the Tax Court did not consider the assessment statute of limitations, it is clear to this Court that failure to raise the affirmative statute of limitations defense at the Tax Court, precludes Haughts from raising it here.

Accordingly, the Court concludes that the statute of limitations for assessment expired before the IRS assessed the taxes claimed due under Count I of the complaint but Haughts' failure to plead the statute of limitations defense before the tax court resulted in the tax court not

considering the issue further resulting in Haughts now being estopped from raising the issue as a bar to enforcement of the Tax Court decision.

**Is the Subject Collection Suit Time Barred**

The subject civil action for the collection of taxes, interest and penalties claimed due on Haughts' 1982 1040 income tax return was commenced by the IRS on March 14, 2006.

26 USC §6502(a)(1) provides: "Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun (1) within 10 years after the assessment of the tax, . . . ."

In the instant case the assessment of tax was made on June 2, 1994. Without more, this would have required the IRS to file the within collection suit on or before June 3, 2004.

On March 28, 2001, Haughts filed an offer in compromise with the IRS which tolls the running of the statute of limitations while the offer is under consideration by the IRS and for a period of 30 days following any rejection of the offer. 26 CFR §301.7122-1( i ) in combination with each other provide for the tolling of the running of the 10 year statute of limitations:

> **(i) Statute of limitations--(1) Suspension of the statute of limitations on collection.** The statute of limitations on collection will be suspended while levy is prohibited under paragraph (g)(1) of this section.
> **(g) Effect of offer to compromise on collection activity--(1) In general.** The IRS will not levy against the property or rights to property of a taxpayer who submits an offer to compromise, to collect the liability that is the subject of the offer, during the period the offer is pending, for 30 days immediately following the rejection of the offer, and for any period when a timely filed appeal from the rejection is being considered by Appeals.
> Accordingly, between the date of the assessment (June 2, 1994) and the date the offer in

compromise was made by Haughts to the IRS (March 28, 2001), 6 years and 298 days of the 10 year statute of limitation ran or expired leaving 3 years and 97 days remaining.

Haughts correctly point out and the IRS does not disagree, that suspension of the tolling of the statute of limitations occurred with Congress' passage of the Community Renewal Tax Relief

Act of 2000, effective December 21, 2000. (Pub. Law 106-554, App. G, §313, 114 Stat. 2763 (the "2000 Act").

However, Haughts also point out that the effect of the Community Renewal Tax Relief Act of 2000 ended with Congress' enactment of the Job Creation and Worker Assistance Act of 2002 (Pub. Law 107-147, 116 Stat.21), which became effective on March 9, 2002. The impact of these two acts on the statute of limitations is that between December 21, 2000, and March 9, 2002, the statute of limitations continued to run, taking 1 year and 78 days off the clock, which only left 2 years and 19 days (749 days) remaining on the 10 year statute plus 30 days after any rejection of an offer in compromise.

The statute continued to be tolled after the passage of the March 9, 2002, effective date of the Job Creation and Worker Assistance Act of 2002 and pending the IRS decision on Haughts' offer in Compromise.

That offer in compromise was rejected by the IRS on July 30, 2003, and the statute of limitations again started to run as of August 29, 2003, the 30th day post rejection of the offer. It would have run from August 29, 2003, forward, but before the expiration of the 30 day grace period, on August 27, 2003, Haughts requested that the IRS reconsider their offer in compromise thereby further tolling of the statute of limitations.

On March 5, 2004, the IRS again rejected Haughts offer in compromise. [Sur-reply, Exhibit 8]. Accordingly, the statute of limitations again began to run as of March 5, 2004. The within collection suit was commenced on March 14, 2006. The interval between March 5, 2004, and March 14, 2006, is 729 days.

Accordingly, the IRS collection suit is timely as it was filed within the 749 days remaining on the statute (749 - 729 = 20 days remaining on the statute as of the date the suit was commenced).

**Alternative Fuel Credit**

In the alternative to summary judgment on expiration of the statute of limitations applicable to assessment and collection, Haughts seek partial summary judgment in the form of an order

directing the IRS to honor the $69,704.00 fuel credit claimed by Haughts in an Amended Individual Income Tax Return (Form 1040X) filed post Tax Court Decision. In the amended return, Haughts claimed credit for fuel produced from non-conventional sources (Devonian Shale) in the year ended December 31, 1982. The Haughts assert they are entitled to a credit of $213,598.00 against their 1982 federal income tax liability. Haughts claim Jesse Watts, an IRS examiner, determined they were entitled to a credit in the amount of $69,704.00.

The IRS does not dispute that Haughts filed a 1040X Amended Return; that they claimed a credit in that Amended Return; or that Watts was the IRS examiner who made a determination that Haughts were entitled to a $69,704.00 credit. The IRS simply says Watts was without authority to bind the IRS to such a credit inasmuch as a superior in a position of such authority did not sign off on the credit.

26 U.S.C.A. §7121 and 7122 repose in the Secretary the authority to enter into settlements with taxpayers and give the Secretary the power to delegate that settlement authority:

§7121(a) provides: "The Secretary is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period."

§7122(a) provides: "The secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense; and the Attorney General or his delegate may compromise any such case after reference to the Department of Justice for prosecution or defense."

Delegation of the authority to settle disputes involving unpaid liabilities is formalized in Delegation Orders issued by the Secretary. The delegation orders are specific with respect to who is authorized to act and with respect of the limits within which he may act in behalf of the Secretary.

Counsel for the United States in the instant case appropriately cites Urso v. United States, 72 F.3d 59, 60 (7th Cir. 1995) for the proposition that"[a]n examiner just can't compromise a tax claim or close a tax year to further examination. An examiner may approve a refund (as this one

did), and any examiner who does so will file a report explaining why (as this one did, on Form 4549), 'Income Tax Examination Changes'), but most refunds are provisional. Only a closing agreement signed by a person authorized to ink such pacts, the expiration of the statute of limitations, or the disposition of litigation brings the process to a guaranteed end. Apparent authority is not enough to bind the federal government to a contract; unless the agent had actual authority, any agreement is ineffectual." (internal citations omitted).

The Fourth Circuit adopted the above rule. In <u>Brooks v. U.S.</u>, 833 F.2d 1136 (4th Cir. 1987) the Court upheld the District Court's determination:

> [T]hat the compromise settlement cannot be enforced against the government despite the superficially apparent acceptance of Frank's offer. Sections 7121 and 7122 of te tax code govern settlement of disputed tax liabilities, and authorize the Secretary of the Treasury or his delegate to enter into written agreements to settle disputes over tax liability and to compromise any civil or criminal case arising under the internal revenue laws. <u>26 U.S.C.A. §7121, 7122 (1967 & Supp. 1987). Section 7122</u> is the exclusive method by which tax cases may be compromised. <u>Botany Worsted Mills v. United States, 278 U.S. 282, 288-89, 49 S.Ct. 129, 131-32, 73 L.Ed. 379 (1929)</u> (prior version of statute): <u>Shumaker v. Commissioner of Internal Revenue, 648 F.2d 1198, 1199-1200 (9th Cir. 1981); Country Gas Service, Inc. v. United States, 405 F.2d 147, 149 (1st Cir. 1969); United States v. Hardy, 299 F.2d 600, 605-06 (4th Cir. 1962); Brast v. Winding Gulf Colliery Co., 94 F.2d 179, 181 (4th Cir. 1938).</u> <i>See</i> <u>Holland v. Commissioner of Internal Revenue Service, 622 F.2d 95, 97 (4th Cir. 1980)</u> (no binding agreement where form seeting forth tax deficiency not approved by District Director). The requirements of those statues and accompanying regulations are strictly construed. <u>Botany Worsted Mills, 278 U.S. at 288-89, 49 S.Ct. At 131`-32.</u><i>cited with approval in</i> <u>Yarborough v. United States, 230 F.2d 56, 62 (4th Cir. 1956).</u> The letter of acceptance given to Frank was signed by the Pittsburgh IRS District Director (actually, stamped with his signature), but the authority to settle disputes involving unpaid liability over $100,000 is granted ony to IRS Regional Commissioners and Regional Counsel. Delegation Order 11 (Rev. 13), 1982-1 Cum.Bull.333. Thus, even if the District Director had signed the letter and intended to accept Frank's offer of compromise, the acceptance would have been ineffective. <i>See e.g.,</i> <u>Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1928)</u> (attempted informal settlement by subordinate officials did not constitute binding agreement): <u>Dorl v. Commissioner of Internal Revenue, 507 F.2d 406, 407 (2d.Cir. 1974)</u> (letter of assurance from revenue officer not authorized to compromise under <u>§7121</u> does not bind United States); <u>Reimer v. United States, 441 F2d 1129, 1130 (5th Cir. 1971)</u> (per curiam) (United States not bound by apparent settlement where agent without authority to compromise taxpayer's tax liability and form stated that IRS not waiving right to further assessment); <u>Country Gas Service v. United States, 405F.2d 147, 149-50 (1st Cir. 1969)</u> (because exclusive means of compromise established by <u>§7122</u> not used, any arrangement taxpayer made with agent had no legal standing); <u>McGee v. United States, 566 F. Supp. 960 (M.D.Fla. 1982)</u> (government not bound by agreement allowing installment payments where agreement not signed by qualified delegate under <u>§7122</u>).

In the instant case, Haughts offer the Court nothing to establish that Revenue Agent Watts had the requisite authority to bind the United States to the $69,704.00 fuel credit. In addition, the document signed by Watts specifically makes his report subject to acceptance by the District Director.[3] There is no evidence that the District Director either accepted Watts' report or that the District Director had any authority to do so.

Accordingly, there is no basis for the Court to direct "the IRS to honor the $69,704.00 alternative fuel credit against the taxpayers' 1982 federal income tax liability and to recalculate penalties, additions and interest accordingly.

**Detrimental Improper Calculation of Interest**

Haughts contend the IRS should not be permitted to assess interest on any unpaid tax from the date the Haughts' 1982 1040 tax return was due to be filed ( April 15, 1983) but instead, is limited to assessing interest from the date it assessed Haughts (June 2, 1994).

26 USC §6601(a) provides: "If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid."

"As a general rule, all taxpayers who fail to pay the full amount of a tax due under the Code must pay interest at the applicable rate on the unpaid amount from the last date prescribed for payment of the tax until the date the tax is paid. . . . Interest on an underpayment starts to accrue form 'the last day prescribed for payment' of the underpaid tax, which is generally the date a taxpayer must file the return reporting the tax due. The date the Code prescribes for an individual taxpayer to pay an income tax is the due date of the return, which for individuals is April 15 of the year following the calendar year for which tax is due. . . . Interest runs on the correct tax due for the year, which, of course, may not be the tax reported due on the taxpayer's return, but rather the tax

---

[3]Defendants' Exhibit 6 to Motion for Summary Judgment provided : "It is understood that this report is subject to acceptance by the District Director."

the Service has determined to be due after an examination. If it is later determined that the correct income tax is greater than the amount shown on the return, interest runs on the unpaid income tax deficiency from the due date of the return until the date the deficiency is paid." Chapter 6.03 and 6.03[1] IRS Practice and Procedure, Michael I Saltzman 2007.

Haughts assert the holding in Schuster v. C.I.R., 312 F.2d 311 (9th Cir. 1962) to the effect that "[i]nterest on deficiencies may not be assessed nor an action brought for their collection until deficiencies are assessed, and deficiencies may not be assessed if petition is filed with tax court for redetermination until taxpayer's liability for tax has been finally established" in opposition to the general rule. It must first be noted that Schuster involved the Commissioner's right to enforce the liability of transferees for the transferor's deficiency in income taxes. The facts of Schuster and the statute upon which the claims and tax liability are based differ from those involved in the Count I claims against Haughts. In Schuster, William P. Baker died testate in 1951. His will nominated his wife, Melba Baker (Schuster), as executrix. She filed an estate tax return. She attached a trust agreement to the return for informational purposes. The trust, administered by a bank designated decedent's daughter, Patricia Baker Englert, as beneficiary. The trust terminated on Englert's thirtieth birthday and at that time she received the proceeds of the trust. Melba Baker did not consider the corpus of the trust as an asset of her late husband's estate and did not pay estate tax on the trust corpus. The then Commissioner agreed. When the trust terminated and its proceeds were paid over to the daughter, she advised the trustee bank that all gift and estate taxes had been paid. The bank did not withhold any taxes. The successor Commissioner did not share the opinion of his predecessor and claimed that the trust corpus was indeed an asset of the decedent's estate subject to estate taxes. 26 USC §827(b) provided personal tax liability on the spouse, transferee, trustee, surviving tenant . . . or beneficiary who received or had property which was a part of decedent's estate as of the date of death. The Schuster case went to the tax court which ruled no liability on Englert, but held the bank and widow liable for the principal tax due. The case was appealed to the Circuit Court. The Commissioner filed a cross petition asserting that the Tax Court's failure to

include interest on the deficiencies it found against Schuster and the bank constituted error.  On appeal the Circuit Court ruled that Schuster was liable; that claims against the bank were barred by limited application of the doctrine of equitable estoppel and that the Tax Court did not have jurisdiction to assess interest under the applicable statutory scheme until the liability was finally determined and thereafter the Commissioner assessed the same and interest that had accrued thereon. The specific language of the decision with respect to interest follows:

> However, interest on deficiencies may not be assessed, nor an action brought for their collection, until the deficiencies are assessed. (26 U.S.C. § 292(a) (1952 ed.)). the deficiencies may not be assessed, if a petition is filed with the Tax Court for a redetermination, until the taxpayer's liability for the tax has been finally established. ( 26 U.S.C. § 272(a)(1) (1952 ed.)). Therefore, matters involving interest must await the outcome of the proceeding for redetermination. It is for this reason that the Tax Court, in determining a taxpayer's liability for the deficiency, does not have jurisdiction to determine his liability for interest. Commissioner of Internal Revenue v. Kilpatrick's Estate, 140 F.2d 887 (6th Cir. 1944); United States v. Globe Indemnity Co., 94 F.2d 576 (2d Cir. 1938); Chapman v. Commissioner, 14 T.C. 943 (1950), aff'd per curiam 191 F.2d 816 (9th Cir. 1951); Fuller v. Commissioner, 20 T.C. 308 (1953), aff'd on other grounds 213 F.2d 102 (10th Cir. 1954); 9 Mertens, Fed. Inc. Taxation, §§ 55.02-55.03 (1958 ed.). Thus, it was not error for the Tax Court to fail to provide for assessment of interest.

> The decision of the Tax Court is affirmed as to Melba Schuster, and reversed as to the United California Bank.

Haughts' reading of Schuster is too narrow.  The Schuster court did not approach the issue that is pending before this Court, to wit: once the assessment has been made, does the interest run from the date of assessment or go back to the date the return was due?  All the Schuster court held was that the tax court had no jurisdiction to assess interest on the tax liability.  That had to await the assessment process which is statutorily in the hands of the Commissioner.

Nothing Haughts have presented convinces this Court that the running of interest is tolled pending the underlying tax dispute or that it only starts running after an assessment has been made.

26 USC §6601 is clear.  Interest on the deficiency claimed under Count I commences with the date that the return was due.  In this case that was April 15, 1983.  The literature and case law explain the rationale for the general rule in the following way: "The exaction of interest on unpaid income taxes after their due date is intended to compensate the government for delay in payment of

the tax, and is not a 'penalty'. . . .  A taxpayer cannot seek redetermination and review of a deficiency in tax, enjoy the delay, and when unsuccessful be heard to say that interest should not be exacted." Owens v. Commissioner, 125 F.2d 210, 213 (10th Cir. 1942).

### Decision and Order

In accord with the foregoing,  Haughts' motion for summary judgment based on running of the statute of limitations with respect to assessment of the taxes claimed in Count I is **DENIED.**

In accord with the foregoing,  Haughts' motion for summary judgment based on running of the statute of limitations with respect to the subject suit for the collection of the taxes claimed in Count I is **DENIED.**

In accord with the foregoing, Haughts' motion for partial summary judgement in the form of an order directing the Plaintiff to honor the $69,704.00 fuel credit is **DENIED.**

In accord with the foregoing, Haughts' motion for partial summary judgment with respect to the date from which the IRS calculated interest is **DENIED.**

It is so **ORDERED.**

The Clerk is directed to transmit certified copies of this Order to all counsel of record herein.

Dated: November 15, 2007

*John S. Kaull*
**JOHN S. KAULL**
**U.  S.  MAGISTRATE JUDGE**